Good morning. May it please the court, Stephen Robbins, attorney for the petitioner in this case. I'd like to reserve two minutes for rebuttal. On January 15th, 2015, Ms. Luz Maria Guzman Soria had a choice to make. She and her family were confronted in the middle of the night by the police and she determined they were looking for somebody and she knew who this somebody was and where they were located. She decided to tell the police officers what she knew, which led to the arrest of her neighbors and some 15 individuals. Ms. Guzman was afraid that having communicated this important information to the police would make her a target and so she fled her country and presented herself at the border for asylum. Could you help me a little? Sure. Let me tell you how I'm conceiving this and you educate me so that if I'm having a real hard time figuring out what discrimination against a particular social group is, it's sort of obvious to me that if the communist Chinese say landlords should all be stripped of their assets and maltreated in one way or another, that's a social group. Or if the Soviets, the Bolsheviks at the beginning of the revolution did the same thing with small business owners or later on with kulaks, clear to me that's a social group. Kulaks aren't a race or anything, they're just peasants who own their land. Once we've gotten past that, it's been hard. And what we seem to have come up with generally in the Ninth Circuit is we defer to the BIA to figure out what it means, just like we do with crime of moral turpitude, because no one has any idea what it means. Sure. I once had an immigration judge tell me, I don't think anyone knows what a social group is, and then he denied for not belonging to a social group. So I think the confusion is shared. The only social group I can figure out here is snitches. If you're in prison, once you're identified as a snitch, any kind of snitch, you may need solitary to protect, to be protected. But to say that a whole country discriminates against snitches seems to take the concept too far. And I think that's all you've got here. Right, well the issue, it sounds like you're somewhat describing the issue of particularity, who's in, who's out, but the board didn't rule on two issues on that issue. One is, you could call it nexus, you could call it particularity, and one thing that hasn't been described, particularly in the cases, but that occurs to me, is the discrimination has to be against a group, not an individual. And that's the way the statute is worded. And I don't know if snitches are a group. I mean, her problem is just, it's not all the women in the village. It's just her, because they think that she told the cops where this guy was. Right, so in matter of MEVG, the board gives us a really useful hypothetical for determining the issue of social distinction, whether or not the society at large sees the group as a group. And the hypothetical they give is former employees of an attorney general, which they share immutable characteristics, but nobody's going around thinking, even the group themselves doesn't have a real sense of group. But once, according to the board, if the group becomes persecuted, if there's violence against the group, then amongst the group there arises a sense of self, a sense of group amongst themselves, and also perhaps amongst society, that society could start to see, oh, okay, these former employees, perhaps I've never thought about them in my life, but now, because they're being persecuted, I'm seeing them as a group. And so, I think that's what happens here. We have to understand the violence against snitches or informants is, by its very design, meant to be public, meant to communicate a message to all of society, that one, this group exists, and two, if you become a member of the group, these are the types of gruesome things that can happen to you. But what was your client's evidence to the agency that she was in such a group? I mean, so she kind of made this more informal, not in court, snitching. What was her evidence that she was going to be targeted for that? Or that people like her are targeted for that? Either one, really. Right. So, in terms of the, we did not allege past persecution because she left the country so quickly, which I think does actually speak to the sort of sense that informants are a group. The fact that she understood herself to be in danger and she wasn't willing to wait around to see if she was going to be threatened or harmed. You know, so she did provide the information to the police directly. The State Department report does indicate that the police often work hand-in-glove with these criminal organizations. There's also the fact that... Was there evidence for that in this case? I know that the police in some areas are the gangs, they're just part of the gangs, and others they aren't. I can't remember about this area. Right. Well, Michoacan is one of the more dangerous parts of Mexico. We do have general statements from the State Department, nothing specific about this locality, necessarily. And then... But did she have evidence that other people who reported to police outside of court have been tortured or persecuted? Well, there's several articles in the record that talk about, for example, individuals who were hung from an overpass and disemboweled and hung next to a sign that says, this is what happens to snitches. And that article actually says that this isn't a new phenomenon. This is on page 212 of the record. The quote, there's nothing necessarily new about victims of the setas hanged from bridges alongside or attached to crude narco banners labeled with accusations of collaborating with the government or with rival cartels. And I think it's important to, again, consider the public nature of the persecution and and to ask ourselves how that public nature of the persecution informs the how much experience committing crimes. But usually what I understand is criminals try to hide the crimes that they commit. They have, you know, hidden torture chambers or things of that nature. But in this particular social group and in this case, the record talks about beheadings on Facebook. So you could be scrolling through your Facebook and suddenly you're watching somebody getting their head cut off with a chainsaw, along with a message that this is what happens to people who cross us or who snitch. And so I think that... Was she really a snitch? The police were already there. They just got the wrong house. It was the house next door. So someone else informed on Checha long before she said no, he might live next door. Right. Well, again, I think that the information that she provided was perhaps a critical missing link at that particular point. And again, there may be questions of particularity, whether or not the group is amorphous or overly broad. But again, we're How do you put an outer bound then on an informant? I mean, if someone's walking by a bank and robbers run out of the bank down the street and the police arrive a moment later and say, which way did they go? And he points in that direction. Does that make that individual a member of the particular social group, an informant in this case? I think if to further develop the hypothetical, if the individuals were then arrested and the pointing of the finger was the critical link between the person either getting away or being arrested, then perhaps they would fit in to the particular social group that we're proposing. But again, the board didn't even discuss and neither did the judge below. And the judge did express something that I thought was was interesting in his decision. Can I just ask you about the BIA decision, though? So the BIA says that we agree with the immigration judge's determination that the lead respondent did not establish that police informants in Mexico and their families are perceived or perceived police informants in Mexico constitute cognizable particular social groups. How do we know that there's anything wrong with that reasoning? Like it seems like you want to interpret this as not making a holding about whether she had enough evidence that this was a cognizable group that was distinct and recognizable. But I'm not sure what how you read this to not make such a holding. Well, the judge didn't mention particularity. He just mentioned social distinction, whether or not, you know, they're socially distinct. And in fact, the judge, I mean, this whole question of, you know, will she be perceived as such or will harm come upon her? The judge did say, quote, unfortunately, she does risk the possibility that the individuals identified may seek retaliation. I think that this is the experience we've had in history. And I think when he said that, he's reflecting something that we all sort of understand intuitively, that when people do these types of things, they run the risk of being retaliated against, especially in a society. That's not social group retaliation. It's individual retaliation. You hurt me, I'll hurt you worse. But I'm not hurting you because you're part of a group where somebody else may be a problem for me. It's just that you're a problem for me. Well, I think I'm out of time. So if I have time in my rebuttal, I'll address that. I think you can go ahead and address it and then we'll have you sit down. Okay. Well, I similar to the hypothetical that the board gives us in MEVG, you know, the group is not defined here by the persecution. People who are afraid of the cartels or who fear retaliation. It's defined by some other thing that they've done or some other immutable characteristic. And that characteristic is having provided valuable information to the police. Now, it's the persecution that I'll still give you a minute for rebuttal. So, but you should sit down now. I think we've taken you over your time. Good morning. May it please the court, Amy Carmichael for the government. So the question before the court is whether petitioner has demonstrated that her proposed group of police informants meets the qualifications that the board has set out for being a particular social group. And specifically, whether that group is socially distinct within Mexico. And the record, in order for you to conclude that the board erred, the record would have to compel the contrary conclusion. And the fact is... I don't know if it doesn't. I mean, the BIA did make a reference to the fact that she is at risk on account of being a snitch. Well, so that historically that's a real problem. I don't know what to make of that. Is that a finding of fact that in Mexico, snitches really are persecuted and that it's outside the control of the government? I have two comments to that, Your Honor. The first is that the immigration judge made that observation, not the board. The board did not rely on that part. So I think that that's relevant. But also the immigration judge's observation is really that it's personal retaliation. It's personal crime. It's a personal vendetta. And it's well established within this circuit that general crimes and personal vendettas are not considered to be on account of a protected ground. So even if... Well, how does that reconcile with Enriquez Rivas, though? Because there, the testimony is what put the petitioners at risk. It could be viewed as a vendetta, but that was also viewed by our court as a potential social group. I think it's important, first of all, that you're correct. It was a potential social group. But also... But we wouldn't have had that whole opinion if we didn't think it was a plausible social group, right? Right. But also in Enriquez, that conclusion was based on the board's decision in matter of CA. And it was tied specifically to the fact that the person had testified in court. And testifying in court, one of the things that I noted in the discussion earlier was, you know, whether or not it's this, the idea of this link to the information, whether it's a vital link. And if you're providing testimony in court, you're providing that vital link. There's reason that somebody who provides testimony in court might be viewed differently than somebody who just provides casual information. What language can we use? Obviously, your big problem is distinguishing Enriquez Rivas. And I'm not really clear how we can... We can't just say, well, we're going to follow the dissent in Enriquez Rivas. We have to follow Enriquez Rivas. So what language in Enriquez Rivas supports your proposition that we ought to limit it to people who testify in open court? The remand in Enriquez Rivas was based specifically on a law that protected people who testified. Hold on, I'm looking for the language. So maybe you can just tell me exactly where to find it in the decision. So, it's in the decision in Enriquez Rivas. The court says that they're looking specifically at a law that was designed specifically to protect people who... There's a special witness protection law that has been tailored to the characteristics of the group. And that witness protection law provided some of the evidence that the board needed to consider in the first instance to determine whether or not the group was socially distinct within Mexico. That similar type of evidence doesn't exist in this record. Well, there is some evidence in the record that there is a witness protection law. First of all, she hasn't actually provided testimony. It's not clear that she would be within a group of people covered by that law. But also, importantly... That discussion of that law, it seems like that's evidence that Salvadoran society considered this group to be a distinct group. But it doesn't seem like that's the only way to get a group to be a distinct group. So maybe this is not Mexico. Right. And I think that that's exactly it. And that's the problem, that there isn't different kind of evidence in this record. In Enriquez, they looked at this law. They determined that the law was good evidence that could support the conclusion that there was a particular social group. Here, if we examine the evidence, the board came to the conclusion that the evidence did not support the conclusion that people who the record has... So it seems that you're interpreting this differently than your opposing counsel. So opposing counsel is arguing that all the board held is, because she didn't testify in court, she can't possibly count. And in some ways, that is what you're arguing to us as well. So if we think that's an error, then do we need to remand? I don't think that the issue is that because she didn't testify, she can't possibly qualify. It's that she didn't testify, and there's no other evidence in the record that supports that people who don't testify qualify. When we look at the evidence of record, there's four articles and the Mexico Human Rights Report. The Mexican Human Rights Report doesn't say anything about witnesses' informants or witness protection. There's not a section of the Human Rights Report that discusses it. There is no discussion of a witness protection law. There is a reference to a witness protection law in the article entitled, Why Mexico's Managed Protected Witnesses is a Disaster. That's in the record at pages 217 to 218. But the main thrust of that article is that Mexico doesn't use its witness protection program. So if witness protection laws suggest that witnesses, and again, it's not clear she would even be covered by that witness protection law, having not formally interacted with the police or provided testimony in court. But to the extent that a witness protection law might demonstrate that there is a distinct social group, the fact that there's a lack of a working program would suggest the opposite. The article states that the government used only 379 protected witnesses during the entirety of President Calderon's six-year administration. Why doesn't that just work? Well, again, the question here isn't risk, it's whether or not it's viewed as a distinct group within society. So even if she's at risk at a personal level, and it's not clear that the record actually establishes that, but that wasn't the basis of the Board's decision. But even if she's at risk at a personal level, unless that risk is connected to her membership in a group, I think there's also an issue here about the relationship between the persecutor's perception and whether or not it's a group. And the Board has explained that the persecutor's perception is not the most important aspect. It's part of, it may be part of the, it may be part of the evidence that's considered. But you're looking not just at the persecutor's perception, but again, at society's perception. Now, this is particularly important here because essentially the only evidence in the record that she might be a member of a group is evidence that she's afraid that the persecutor is going to retaliate against her. Well, no, no, that's not right. The evidence that she's in a group is that it's uncontradicted and undisputed that when the cops came to the wrong house, she said, guy by that name is maybe next door. Right, that's that she provided information to the police. Right, so the group is people who provide information to the police. Correct. But she still has the burden of demonstrating that Mexican society views people who provide information to the police as a distinct group that's set apart from the rest of society, that it's a discrete subset of society. And her primary evidence on that point... Well, that could be so, and I just wonder whether, oh, I suppose providing information to the Americans about who's an ISIS member in Iraq, that could be a dangerous thing if ISIS controls the territory. Well, I think that this is really... This is a really important point, actually, is that it's society specific. So someone in Iraq providing information to the police is not actually in the same situation as somebody in Mexico providing information to the police. And somebody, as Enriquez Rivas, who testifies in El Salvador, is not in the same position. The board has a discussion in, I believe it's in MEVG, talking about landowners, that if you're a landowner in an agrarian society that's oligarchical, that might be a particular social group and important. If you're a landowner in Canada, probably not. So we have to look at this within the context of the specific society. And that's where the country conditions evidence is really important. And the country conditions evidence here demonstrates that gangs and cartels harm people who go against them in any way. The discussion about the internet snitches, it's not actually addressing people who provide information to the police. It's addressing people who provide information on social media and journalists. And the suggestion is that gang members hurt people who aren't part of the gang, and who provide any kind of information or talk bad about them, and they kind of indiscriminately. And that does not support the conclusion, much less compel the conclusion, that people who provide information to the police are in fact a distinct social group within Mexican society. Do any of the cases subsequent to the Enriquez Rivas embank give you language that matters here? Well, I mean, the board affirmed WGR, or the court, I'm sorry, the court affirmed WGR and Reyes, and also gave Chevron deference to MEVG in that case. And in that case, it's the types of evidence that are important, and the fact that it is a society by society and evidence specific inquiry, and I think that that is helpful here. Thank you, counsel. Thank you. We'll give you a minute for rebuttal. Thank you. There is a footnote in Enriquez that says specifically that this court did not intend to suggest that, quote, the public nature of Enriquez Rivas' testimony is essential to our eligibility for asylum. So I think that's too narrow of a reading of that case. I also think... Can they do that? I mean, all a court, as opposed to a legislature, can do is decide the case in front of it. Can they legislate for the cases where the person is not a witness? I think that's exactly right. I think every case needs to be considered on their own facts. I also think the respondents' reading and the agency's reading of the evidence is frankly too dismissive and limited. They cite in their brief on page 203 of the record, and what the respondent says in her brief is that this article contains no meaningful information about police informants. That same page they cite to, page 203, says that criminal organizations post these gruesome photos to Facebook or social media, quote, warning civilians not to snitch on them to authorities. So the respondent and the agency are saying, these articles don't say anything about what we're talking about, and actually they do. So we're hoping for a fair reading of the evidence, and we think that the case should be remanded to consider the record, and also to consider the legal errors that were made below. Thank you. Thank you, both sides, for the very helpful arguments. The case is submitted.
judges: Kleinfeld, Friedland, Pauleyiii